IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT WESLEY FOX (01),<br><br>Defendant. | Case No.  17-40075-01-DDC |

**MEMORANDUM AND ORDER**

This matter comes before the court for decision on defendant Robert Wesley Fox's Motion to Dismiss (Doc. 9).  On August 23, 2017, a grand jury charged Mr. Fox with one count of failing to register as required under the Sex Offender Registration and Notification Act ("SORNA").  Mr. Fox now challenges this indictment, arguing that SORNA is unconstitutional.  The government has filed a response to Mr. Fox's motion (Doc. 12).  On January 4, 2018, the court held a hearing and took this motion under advisement.  The court is ready to rule.  For reasons explained below, the court denies Mr. Fox's Motion to Dismiss.

**I.    Facts**

*Facts Leading to the Government Charging Mr. Fox*

On April 4, 1997, the El Paso County District Court in Colorado convicted Mr. Fox of Sexual Assault of a Child between the Age of 15 and 18 Years Old.  As required by various state sexual offender registration laws, he registered as a sex offender at least three times:  on April 5, 2010 in Sedgwick County, Kansas; on May 18, 2010, in Colorado Springs, Colorado; and on October 11, 2010 in Lee County, Mississippi.

In August 2017, deputies from the United States Marshals Service (USMS) were advised[1] that Lee County, Mississippi had issued a warrant for Mr. Fox for failing to register as a sex offender. According to the deputies' information, Mr. Fox was living in Marysville, Kansas. On August 16, 2017, the deputies contacted Marysville law enforcement officials and showed them Mr. Fox's photograph. The Marysville officials advised that they believed they had spoken with Mr. Fox earlier that summer. And USMS deputies discovered that someone added Mr. Fox's name to a Westar Energy account in Marysville on June 20, 2017.

That day, USMS deputies arrested Mr. Fox on the Mississippi warrant. On August 23, 2017, the grand jury charged Mr. Fox with failing to register as required under SORNA.

*SORNA*

In response to several high profile and horrific incidents committed by individuals previously convicted of sex crimes, Congress passed SORNA to create a comprehensive national registry for sex offenders. 34 U.S.C. § 20901 ("In order to protect the public from sex offenders and offenders against children, and in response to the vicious attacks by violent predators against the victims listed below, Congress . . . establishes a comprehensive national system for the registration of [sex] offenders . . . .").[2] It aims to accomplish this goal by creating "a national baseline for [state] sex offender registration and notification programs." The National Guidelines for Sex Offender Registration and Notification, 73 Fed. Reg. 38,030, 38,046 (July 2, 2008).

---

[1]   It is unclear who advised law enforcement of the outstanding warrant.

[2]   On September 1, 2017, the Office of the Law Revision Counsel moved SORNA from Title 42 of the United States Code to Title 34. Office of the Law Revision Counsel, *United States Code Editorial Reclassification Table* 1, 36 (Aug. 28, 2017), http://uscode.house.gov/editorialreclassification/t34/T34ERT.pdf. This relocation did not change SORNA's text. *Id.*

SORNA requires each sex offender to register in each state where he resides, is an employee, and is a student.  34 U.S.C. § 20913(a).  When registering, the offender must provide, among other things, his name, social security number, home address, employer's address, school's address, license plate information, a description of his vehicle, and international travel plans.  *Id.* § 20914(a).  Each state, in turn, must ensure that its registry contains, among other things, a physical description of the sex offender, the law under which he was convicted, the offender's current photograph, his DNA, his fingerprints, and a copy of the offender's driver's license.  *Id.* § 20914(b).  An offender who moves across state lines and fails to register can be charged with a federal crime.  18 U.S.C. § 2250(a).

SORNA also mandates that each state's registry is available on the Internet.  34 U.S.C. § 20920(a).  And the Attorney General maintains a national database for all sex offenders.  The Attorney General must allow social networking sites to access this information.  *Id.* § 20917(a).

Congress did not decide whether sex offenders who committed offenses before SORNA took effect were required to register.  *Id.* § 20913(d).  Instead, it allowed the Attorney General to decide that question.  *Id.*

**II.     Discussion**

In his Motion to Dismiss, Mr. Fox argues that SORNA is unconstitutional for four reasons.  First, he argues that SORNA violates the First Amendment's compelled speech doctrine.  Second, he asserts that SORNA violates the Constitution's Ex Post Facto Clause.  Third, he contends that SORNA impermissibly delegates legislative authority to the Attorney General.  And last, he argues that Congress exceeded its enumerated powers when it enacted SORNA.  The court addresses these four arguments in subsections A through D, below.

A.	First Amendment

Mr. Fox's first argument contends that SORNA violates the First Amendment because it forces him to speak. Specifically, he argues that SORNA forces him to declare that he is a dangerous person and forces him to reveal facts that he would prefer to keep secret. In general, the First Amendment "'prohibits the government from telling people what they must say.'" *Agency for Int'l Dev. v. Alliance for Open Society Int'l, Inc.*, 570 U.S. 205, 213 (2013) (quoting *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 61 (2006) (further citations omitted)).

The only Circuit to address the First Amendment argument made by Mr. Fox is the Fifth Circuit. *See United States v. Arnold*, 740 F.3d 1032, 1034 (5th Cir. 2014). The Fifth Circuit's opinion considered two leading "compelled speech" doctrine cases decided by the Supreme Court—*West Virginia State Board of Education v. Barnette*, 319 U.S. 624 (1943), and *Wooley v. Maynard*, 430 U.S. 705 (1977). In *Barnette*, the Supreme Court held that West Virginia could not compel students to salute the flag or recite the pledge of allegiance because such a law might require a speaker to affirm a belief with which he disagreed. 319 U.S. at 642. *Wooley* invalidated a New Hampshire law requiring all noncommercial license plates to show the state motto, unobstructed. 430 U.S. at 715. This law, the Supreme Court concluded, essentially required all New Hampshire citizens to be a "'moving billboard' for [New Hampshire's] ideological message . . . ." *Id.* After analyzing these cases, *Arnold* concluded that SORNA did not compel the offender in that case to speak in violation of the First Amendment because the law did not require him "(a) to affirm a religious, political, or ideological belief he disagrees with or (b) to be a moving billboard for a governmental ideological message." *Id.* at 1035.

While our Circuit has not yet considered the issue decided in *Arnold* and presented here, the court predicts it would reach the same result as *Arnold* reached. In other words, the court concludes that the Circuit also would conclude that SORNA does not compel Mr. Fox to speak in a fashion protected by the First Amendment.

While the court adopts and follows *Arnold* here, it amplifies one aspect of the opinion. One might read parts of *Arnold* to imply that the compelled speech doctrine is limited to situations like the ones presented in *Barnette* and *Wooley*, *i.e.*, to laws requiring a person "to affirm a religious, political, or ideological belief he disagrees with" or to serve as a "moving billboard" for a government's "ideological message." *See id.* The court does not understand the doctrine as one so limited.

In *Riley v. National Federation of the Blind of North Carolina, Inc.*, 487 U.S. 781, 798 (1988), the Supreme Court applied the doctrine in a case where a state law compelled a person to disclose facts that the person did not want to disclose. In that case, a North Carolina law required all professional fundraisers to disclose to potential donors the percentage of funds they had solicited in the last year that actually were devoted to charity. *Id.* at 795. Professional fundraisers challenged the law, arguing that it constituted compelled speech. *Id.* North Carolina argued that the law could not offend the compelled speech doctrine because it only compelled statements of fact. *Id.* at 797. The Court analyzed, among other cases, *Wooley* and *Barnette*, and concluded, "These cases cannot be distinguished simply because they involved compelled statements of opinion while here we deal with compelled statements of 'facts:' either form of compulsion burdens protected speech." *Id.* at 797–98.

Here, SORNA only requires Mr. Fox to disclose facts. The court thus concludes that *Riley* controls the analysis of this case.³ And, as *Riley* instructs, simply because a law compels speech does not end the court's inquiry. *Id.* at 798; *see also Barnette*, 319 U.S. at 645 (Murphy, J., concurring) ("The right of freedom of thought and of religion as guaranteed by the Constitution against State action includes both the right to speak freely and the right to refrain from speaking at all, except in so far as essential operations of government may require it for the preservation of an orderly society . . . ."). Instead, the *Riley* analysis requires a reviewing court to determine if the compelled speech SORNA requires satisfies strict scrutiny. *Riley*, 487 U.S. at 798. If it does, the law can stand. *Id.*

A law satisfies strict scrutiny when the government proves that the law is narrowly tailored to serve compelling governmental interests. *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2226 (2015). The court easily concludes that SORNA serves a compelling governmental purpose. "'The purpose, or justification, of a [law] will often be evident on its face.'" *Doe v. City of Albuquerque*, 667 F.3d 1111, 1133 (10th Cir. 2012) (quoting *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 642 (1994)). This purpose must solve a real problem, "'not merely a conjectural'" one. *Id.* at 1132 (quoting *Turner Broad. Sys.*, 512 U.S. at 664). Here, Congress declared SORNA's purpose explicitly. It protects the public "from sex offenders and offenders against children, and in response to the vicious attacks by violent predators against [victims listed in the statute] . . . ." 34 U.S.C. § 20901. Indeed, the Supreme Court has recognized that convicted sex offenders "are much more likely than any other type of offender to be rearrested

---

³ The court is mindful that Mr. Fox makes allegations here that the *Arnold* offender did not. Namely, Mr. Fox argues that the SORNA-mandated disclosures require him to affirm a political or ideological belief and also require him to serve as a moving billboard for a governmentally-sponsored ideological message. Doc. 9 at 17. But saying something is so does not make it so. SORNA merely requires Mr. Fox to provide factual information about himself and the record of his sex conviction. This is not the kind of ideological content discussed in *Barnette*. 319 U.S. at 632. Nor does providing this information to a government registry turn Mr. Fox into any kind of moving billboard, as was the case in *Wooley*. 430 U.S. at 715.

for a new [sexual offense]." *McKune v. Lile*, 536 U.S. 24, 33 (2002) (citing U.S. Dep't of Justice, Bureau of Justice Statistics, Sex Offenses and Offenders 1 (1997)). Protecting the public from such offenders is a compelling governmental purpose. *See Doe v. Moore*, 410 F.3d 1337, 1349 (11th Cir. 2005) ("The state has a strong interest in preventing future sexual offenses and alerting local law enforcement and citizens to the whereabouts of those that could reoffend.").

This conclusion moves the analysis to the second part of the strict scrutiny test: Is SORNA narrowly tailored to serve its compelling purpose? SORNA protects the public by allowing the general public and state law enforcement to track sex offenders who move from another state. It does so by compiling information from every state about convicted sex offenders into a national database, creating national minimum standards for the type of information states must collect, and requiring convicted sex offenders to provide that information to state officials when they move to a new state. The National Guidelines for Sex Offender Registration and Notification, 73 Fed. Reg. at 38,045. The only speech compelled by SORNA is facts that provide the public and state law enforcement officials with the necessary information to track them effectively. The identifying information that SORNA requires sex offenders to provide enables law enforcement to locate the offenders, *i.e.*, name, social security number, certain addresses they frequent, and international travel plans. *See* 34 U.S.C. § 20914(a). And it only requires them to disclose it when they move and to update the information periodically to ensure its accuracy.

Indeed, in *Riley*, the Supreme Court indicated that a mandatory reporting law like SORNA might be constitutional. As explained above, in *Riley*, North Carolina had passed a law requiring all professional fundraisers to disclose to potential donors what percentage of money they raised in the last year had gone to charity to inform donors fully about the use of the money

they might donate. *Riley*, 487 U.S. at 785, 798. While the Supreme Court held that the fundraising law was imprecise and unduly burdensome on professional fundraisers' freedom of speech, *id.* at 799, the Supreme Court suggested that a law requiring professional fundraisers to disclose the fundraisers' cut of the donations to the state who then could publish the information in a database would pass constitutional muster, *id.* at 800.

Here, SORNA operates precisely as *Riley* suggested. SORNA requires convicted sex offenders to disclose information to states who, in turn, publish that information in a database. It does not require sex offenders to declare their status to every person they meet. Yes, SORNA compelled Mr. Fox to speak. But the law serves a compelling government interest and does so in a narrowly tailored fashion. It does not offend the First Amendment.

Naturally, Mr. Fox disagrees. He argues that SORNA is not narrowly tailored. SORNA's purpose, according to Mr. Fox, is to protect children from violent predators. Mr. Fox does not contest that this is a compelling governmental interest but he argues that SORNA is not narrowly tailored to serve that purpose. He argues that the law is overbroad because it applies to non-violent sex offenders as well as violent predators. And the law does not require the Attorney General to prove that a sex offender is violent before requiring him to register. He contends that Congress could have tailored the law more narrowly by requiring the Attorney General to prove that a sex offender is dangerous before requiring the offender to register.

The court disagrees with Mr. Fox's characterization of SORNA's goal. For one, SORNA does not label sex offenders as dangerous—it labels them as convicted sex offenders. And SORNA's statement of purpose does not single out violent predators of children. *See* 34 U.S.C. § 20901. Instead, its expressed goal is to protect the public "from sex offenders *and* offenders against children, *and* in response to the vicious attacks by violent predators . . . ." *Id.* (emphasis

added).  The court concludes that SORNA provides law enforcement officials and the public with information about sex offenders to further these goals directly.  SORNA survives strict scrutiny and does not infringe on Mr. Fox's First Amendment rights improperly.

### B. Ex Post Facto

Mr. Fox next argues that prosecuting him for failing to register under SORNA when the offense he originally was convicted for occurred before SORNA's effective date—2006—violates the Constitution's Ex Post Facto Clause.  To violate the Ex Post Facto Clause, the law "'must apply to events occurring before its enactment' and 'must disadvantage the offender affected by it.'"  *United States v. Lawrance*, 548 F.3d 1329, 1332 (10th Cir. 2008) (quoting *Weaver v. Graham*, 450 U.S. 24, 29 (1981) (further citations omitted)).

The Tenth Circuit already has decided this issue, and against Mr. Fox.  It held that prosecution under SORNA based on an underlying sex offense committed before 2006 did not violate the Ex Post Facto Clause.[4]  *Id.* at 1333.  The Circuit rejected the notion that SORNA punished sex offenders for conduct that occurred prior to 2006.  *Id.* at 1334.  Instead, the Circuit reasoned that the only conduct SORNA punishes is failing to register—an offense occurring after 2006.  *Id.* at 1333.  The court follows this binding precedent and thus denies Mr. Fox's reliance on this ground.  *B.T. ex rel. G.T. v. Santa Fe Pub. Sch.*, 506 F. Supp. 2d 718, 725 (D.N.M. 2007) ("[L]ower courts are required to follow the precedential decisions of higher courts on questions of law.").

### C. Non-Delegation Doctrine

Third, Mr. Fox argues that Congress violated the non-delegation doctrine when it failed to provide an intelligible principle to guide the Attorney General's decision to prosecute those

---

[4]   Mr. Fox understands that *Lawrance* controls the court's decision, and raises this argument only to preserve it for appeal.  Doc. 9 at 22.

9

who were convicted of a sexual offense before SORNA's effective date.  As a general principle, Congress cannot delegate its legislative authority to the Executive branch unless it provides an intelligible principle to guide the Executive.  *Mistretta v. United States*, 488 U.S. 361, 372 (1989).  An intelligible principle is one where "Congress clearly delineates [1] the general policy, [2] the public agency which is to apply it, and [3] the boundaries of this delegated authority."  *Id.* at 372–73.

The Tenth Circuit already has held that SORNA does not violate this non-delegation principle.[5]  *United States v. Nichols*, 775 F.3d 1225, 1231 (10th Cir. 2014), *rev'd on other grounds*, 136 S. Ct. 1113 (2016).  The Circuit held that SORNA's general policy was "'to protect the public from sex offenders and offenders against children' by establishing 'a comprehensive national system for the registration of those offenders.'"  *Id.* (quoting 34 U.S.C. § 20901).  And Congress explicitly identified the public agency who must apply SORNA's general policy—the Attorney General of the United States.  *Id.*; *see also* 34 U.S.C. § 20913(d).  SORNA provides boundaries to the Attorney General because it confines his legislative authority, permitting him to decide only whether sex offenders convicted before SORNA's effective date must register.  *Nichols*, 775 F.3d at 1231.  The court must follow this binding precedent and deny Mr. Fox's motion on this ground.  *Santa Fe Pub. Sch.*, 506 F. Supp. 2d at 725.

   **D.** **Commerce Clause**

Last, Mr. Fox argues that Congress exceeded its power under the Commerce Clause when it passed SORNA.  Specifically, he contends that SORNA attempts to regulate inactivity, which the Supreme Court held Congress cannot do in *National Federation of Independent Business v. Sebelius*, 567 U.S. 519, 552 (2012).

---

[5] Mr. Fox acknowledges that *Nichols* is controlling precedent.  Doc. 9 at 26–27.

Like his two previous arguments, the Tenth Circuit has considered and rejected Mr. Fox's argument. *United States v. White*, 782 F.3d 1118, 1123 (10th Cir. 2015). It held that the Commerce Clause authorized Congress to enact SORNA.[6] *See id.* In *White*, defendant raised the same argument as Mr. Fox does here—namely, that *NFIB* precludes Congress from enacting a law forcing sex offenders to participate in interstate commerce by registering. *Id.* at 1123. *White* rejected this argument's premise. *Id.* The Circuit reasoned that SORNA never regulated inactivity because only those who *moved* in interstate commerce and failed to register could be prosecuted. *Id.* at 1125. And because SORNA only applies to sex offenders who move in interstate commerce, SORNA permissibly regulated the "'channels of interstate commerce' and 'persons or things in interstate commerce.'" *Id.* at 1124 (quoting *United States v. Lopez*, 514 U.S. 549, 558 (1995)). In contrast, *NFIB* focused solely on Congress's power (or rather, absence of power) to regulate inactivity in intrastate commerce that substantially affected interstate commerce. *Id.* at 1124–25 (discussing *NFIB*, 567 U.S. at 550–52). The court must follow this binding precedent and deny Mr. Fox's motion on this ground. *Santa Fe Pub. Sch.*, 506 F. Supp. 2d at 725.

### III. Conclusion

For reasons explained above, the court denies Mr. Fox's Motion to Dismiss. The court sets this case for a status conference on **February 12, 2018, at 9:00 a.m.**

**IT IS THEREFORE ORDERED BY THE COURT THAT** Mr. Fox's Motion to Dismiss (Doc. 9) is denied.

**IT IS SO ORDERED.**

---

[6] Mr. Fox recognizes that *White* is controlling precedent. Doc. 9 at 38.

**Dated this 2nd day of February, 2018, at Topeka, Kansas.**

                                               **s/ Daniel D. Crabtree**
                                               **Daniel D. Crabtree**
                                               **United States District Judge**